Filed 8/31/16  P. v. Smith CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>WILLIAM H. SMITH,<br><br>　　　Defendant and Appellant. | B260586<br><br>(Los Angeles County<br>Super. Ct. No. MA062986) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

　　　Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Following a plea of no contest to unlawful driving or taking a motor vehicle with a prior conviction for felony theft involving an automobile, defendant William Smith was placed on formal probation. His probation was revoked after he failed to report to the probation department. After the trial court denied his petition for recall and sentencing under Proposition 47, defendant admitted violating the terms of probation. Although he was sentenced to three years in county jail for the violation, the court suspended his three-year sentence and reinstated formal probation with additional terms. On appeal, defendant contends the court erred in denying his Proposition 47 petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2014, deputies from the Los Angeles Sheriff's Department saw a 1999 Dodge Dakota pickup truck without a front license plate and pulled it over. After discovering the truck had been reported stolen in North Carolina, they arrested defendant, the driver.

By felony complaint filed May 13, 2014, the People charged defendant with one count of driving or taking a vehicle with a prior (Pen. Code, § 666.5, subd. (b); count 1). The People also alleged defendant had been previously convicted of receiving a stolen vehicle (Pen. Code, § 496d, subd. (a))—and that this offense constituted both the predicate felony for count 1 and a prison prior (Pen. Code, § 667.5, subd. (b)). On May 13, 2014, defendant pled no contest to count 1 and admitted the prior felony conviction. On June 3, 2014, the trial court suspended imposition of sentence and placed defendant on formal probation for three years. Among other probationary terms, the court ordered defendant to serve eight days in county jail, perform 40 days of community labor, and report to the probation department within 48 hours. The court dismissed the prison prior (Pen. Code, § 667.5, subd. (b)).

Defendant failed to report to the probation department and to appear in court as ordered. Accordingly, the court revoked his probation and issued a bench warrant for

2

his arrest.  After defendant was arrested or surrendered, he was remanded to custody without bail pending a probation violation hearing.

On November 12, 2014, defendant filed a petition for recall and resentencing under Proposition 47.  At a hearing on November 17, 2014, defense counsel acknowledged that Penal Code section 666.5 (Section 666.5) is not an enumerated offense under Proposition 47, but argued that the reduction of other, similar crimes implied defendant's conviction under Section 666.5 was likewise reducible from a felony to a misdemeanor.  The court disagreed and denied the petition; it found that Proposition 47 was not applicable to Section 666.5 or to "Vehicle Code Section 10851, which is really the precursor to [Section] 666.5."  Thereafter, defendant waived his right to a formal probation violation hearing and admitted that he violated his probation by failing to report to the probation department.  The court revoked and reinstated probation, required defendant to serve an additional 180 days in county jail, and imposed and suspended a three-year sentence in county jail.

Defendant filed a timely notice of appeal.

## CONTENTIONS

Defendant contends his conviction under Section 666.5 should be treated as a conviction under Vehicle Code section 10851 (Section 10851), and that Section 10851 is a reducible theft offense under Proposition 47.  Alternatively, defendant contends that failing to reduce Section 10851 under Proposition 47 would violate his constitutional right to equal protection of the law.

## DISCUSSION

The issue before us is a question of law, which we review de novo.  (*People v. Cromer* (2001) 24 Cal.4th 889, 893–894.)

### 1.　　Section 666.5

As a preliminary matter, defendant argues that Section 666.5 is not a substantive offense, but rather an increased punishment provision for serial violators of Section 10851.  Accordingly, he explains that his plea to Section 666.5 was really a plea

to Section 10851, and asks us to review his Proposition 47 claim under that statute instead.

Section 666.5 is a type of alternative sentencing scheme that applies to recidivist car thieves and those previously convicted of violating of Section 10851. It requires conviction of an enumerated offense first, then provides increased penalties for any defendant with similar prior theft or Section 10851 convictions. Although Section 666.5 is a penalty provision, because it establishes a higher base term instead of adding a separate, additional sentence, it is not an enhancement. (See, e.g., *People v. Tardy* (2003) 112 Cal.App.4th 783, 787, fn. 2 ["Although section 666 has been referred to as a sentencing enhancement statute [citation], in fact it is not an 'enhancement' because it does not add to the base term. [Citation.] Rather, it provides a wholly 'alternate and elevated penalty' upon a finding of a prior qualifying theft conviction. [Citation.]"]; Cal. Rules of Ct., rule 4.405(3) [defining sentence enhancement as an additional term of imprisonment added to the base term].) Defendant argues that because Section 666.5 is a type of alternative sentencing scheme, it is not a "substantive offense," and therefore, he was actually convicted of the triggering crime, Section 10851. In support of that claim, defendant relies on *People v. Garcia* (2003) 107 Cal.App.4th 1159 (*Garcia*) and *People v. Young* (1991) 234 Cal.App.3d 111 (*Young*). Neither case stands for the proposition asserted.

In *Garcia*, the court addressed whether, in light of the prohibition on the dual use of facts to impose multiple sentence enhancements, the trial court properly used a prior Section 10851 conviction to impose both an elevated base term under Section 666.5 *and* a sentence enhancement under Penal Code section 667.5. (*Garcia*, *supra*, 107 Cal.App.4th at p. 1165.) The court concluded the sentence was proper; because Section 666.5 is an alternative sentencing scheme rather than a sentence enhancement, the trial court was not imposing two sentence enhancements based on the same prior conviction. (*Ibid*.) Since the defendant in *Garcia* was convicted under Section 10851, not Section 666.5, the court did not have occasion to address whether a defendant may be properly convicted under Section 666.5. Accordingly, *Garcia* does not support

4

defendant's position that his Section 666.5 conviction should instead be treated as a conviction under Section 10851. (See *People v. Sapp* (2003) 31 Cal.4th 240, 262 [an appellate opinion is not authority for propositions not considered by the court].)

In *Young*, the court examined whether a defendant's prior conviction was an element of the offense that had to be proven to the trier of fact under Proposition 8. (*Young, supra*, 234 Cal.App.3d at pp. 114–115.) The court concluded it was not. (*Ibid*.) The defendant could therefore admit the conviction and thereby prevent the jury from learning about it. (*Id.* at p. 115.) While the opinion is unclear on the point, the defendant in *Young* appears to have been convicted under Section 666.5, and there is no indication the court concluded that a conviction for violating Section 666.5 was invalid. (*Id.* at pp. 113–114.)

In short, these cases do not hold—and our research has not revealed any other case that has held—that Section 666.5 is an invalid crime of conviction or that a defendant who pleads guilty to Section 666.5 has *actually* pled guilty to some other offense. We need not resolve this issue, however.[1] Because we hold Section 10851 is not reducible under Proposition 47, defendant is ineligible for resentencing under either statute.

### 2. Proposition 47

On November 4, 2014, California voters approved Proposition 47, the Safe Neighborhoods and Schools Act. (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014).) The initiative aimed to "ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from" the Act in elementary and high school programs,

---

[1] Defendant does not contend his plea was unlawful or that the court imposed an unauthorized sentence, and he does not seek to withdraw the plea. (See *In re Williams* (2000) 83 Cal.App.4th 936, 944–945 [where agreed-upon sentence exceeds court's jurisdiction, the court lacks power to effectuate the bargain, and defendant's remedy is to withdraw the plea]; *People v. Kim* (2011) 193 Cal.App.4th 1355, 1362 [defendant cannot enforce an illegal term of a plea bargain].)

victims' services, and mental health and drug treatment. (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70.) Proposition 47 targets these goals in four ways: (1) it amends the Penal Code and Health and Safety Code to reduce certain property crimes and possessory drug offenses from felonies or wobblers[2] to misdemeanors; (2) it allows people serving felony sentences for newly-reduced offenses to ask the court to resentence them as misdemeanants (Pen. Code, § 1170.18, subd. (a), (b)); (3) it allows people who have finished serving a qualified felony sentence to ask the court to reclassify the conviction as a misdemeanor (Pen. Code, § 1170.18, subd. (f)–(h)); and (4) it creates a Safe Neighborhoods and Schools Fund to be financed with savings generated by the changes to the sentencing laws (Gov. Code, § 7599 et seq.). (Ballot Pamp., *supra*, text of Prop. 47, § 3, p. 70.)

As relevant to the present case, though Proposition 47 purported to reduce the penalties for grand theft, it did not directly amend any substantive theft statute. (Ballot Pamp., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35 ["Specifically, the measure reduces the penalties for the following crimes: [¶] Grand Theft."].) Instead, the initiative added a new provision to the Penal Code chapter dealing with theft. (Pen. Code, § 490.2; see Pen. Code, § 484 et seq.) The new provision provides, "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor" unless the defendant has been convicted of a specified violent or serious crime. (Pen. Code, § 490.2.)

Under Penal Code section 1170.18, a defendant currently serving a felony sentence for a crime that would have been a misdemeanor under Proposition 47 may petition for resentencing in accordance with the provisions of the Act, including

---

[2]  As the Legislative Analyst explained, "some crimes . . . can be charged as either a felony or a misdemeanor. These crimes are known as 'wobblers.' Courts decide how to charge wobbler crimes based on the details of the crime and the criminal history of the offender." (Ballot Pamp., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.)

newly-added Penal Code section 490.2 (Section 490.2). (Pen. Code, § 1170, subd. (a)-(b).) Because Section 10851 is not separately designated as a reducible offense under the Act, the issue before us is whether it has been impliedly reduced by operation of Section 490.2. We conclude it has not.[3]

### 3. Principles of Statutory Construction

As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796.) Because Proposition 47 was enacted by the electorate, it is the voters' intent that controls. (*Ibid.*) "Nonetheless, our interpretation of a ballot initiative is governed by the same rules that apply in construing a statute enacted by the Legislature." (*Ibid.*)

To determine intent, we first examine the statutory language and give the words their ordinary meaning. (*People v. Park*, *supra*, 56 Cal.4th at p. 796.) "Words and phrases must be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." (Pen. Code, § 7, subd. (16).) If the statutory language is unambiguous, its plain meaning controls; if the statutory language is ambiguous, we may refer to " 'other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " (*People v. Rizo* (2000) 22 Cal.4th 681, 685.)

### 4. Obtaining Property by Theft

As enacted by Proposition 47, Section 490.2 neither redefines nor establishes a substantive theft offense. Instead, "theft" is defined in Penal Code section 484, subdivision (a), which provides: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently

---

[3] There is a split of authority on whether Section 10851 is a reducible offense under Proposition 47. The issue is pending before the California Supreme Court in *People v. Page*, review granted January 27, 2016, S230793. Because there is no currently-citeable authority on this issue, we consider it anew.

7

appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft." (See *People v. Davis* (1998) 19 Cal.4th 301, 304–305 [Pen. Code, § 484 consolidates several formerly distinct offenses into the single crime of theft, including larceny and theft by trick].) Penal Code section 490a, in turn, provides that any law referring to larceny, embezzlement, or stealing is a theft offense. (Pen. Code, § 490a.)

The statute's reference to various "felonious[]" takings imports the common law's specific intent requirement into Penal Code section 484's designations of these takings as thefts. (*People v. Avery* (2002) 27 Cal.4th 49, 55, 58.) To steal or obtain property by theft, a defendant must take the property with the specific intent "to permanently deprive the owner of possession." (*People v. Davis*, *supra*, 19 Cal.4th at p. 305; *People v. Avery*, *supra*, at p. 54 ["California courts have long held that theft by larceny requires the intent to *permanently* deprive the owner of possession of the property."].[4]) Without "a specific intent to steal, i.e., an intent to deprive an owner permanently of his property," "[t]he taking of property is not theft[.]" (*People v. Butler* (1967) 65 Cal.2d 569, 572–573, overruled on other grounds by *People v. Tufunga* (1999) 21 Cal.4th 935, 956; see *People v. Matlock* (1959) 51 Cal.2d 682, 694 ["It is elementary that the taking of property is not theft in the absence of an intent to steal."].)

Every theft offense is either grand theft or petty theft—and the punishment options depend on the degree of the crime. (Pen. Code, § 486.) A defendant commits

---

**4**      In *People v. Avery*, the Court held that although theft requires an intent to permanently deprive the owner of property, this requirement may be satisfied by the intent to take the property temporarily, "but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment." (*People v. Avery*, *supra*, at p. 52.)

grand theft, a wobbler, "[w]hen the money, labor, or real or personal property taken" exceeds $950. (Pen. Code, § 487, subd. (a).) Before the passage of Proposition 47, however, not all theft crimes were subject to the $951 grand-theft minimum. Theft of some property became grand theft at a lower value threshold; for example, a defendant only had to steal $250 worth of "domestic fowls, avocados, olives, citrus," or other produce to be guilty of grand theft. (§ 487, subd. (b)(1); see § 487, subd. (b)(2) [$250 worth of aquacultural products from a commercial or research operation].) And theft of other types of property was deemed grand theft regardless of value. For example, every theft of a "hog, sow, boar, gilt, barrow, or pig" was designated grand theft (Pen. Code, § 487a), as was theft of "gold dust, amalgam, or quicksilver" from "any mining claim, tunnel, sluice, undercurrent, riffle box, or sulfurate machine" (Pen. Code, § 487d). (See *People v. Whitmer* (2014) 230 Cal.App.4th 906, 918 ["It is well established that the Legislature's intent regarding this provision was to designate theft of the enumerated items as grand theft regardless of their value."].)

Any theft not defined as grand theft is petty theft, a misdemeanor (Pen. Code, § 488)—and Section 490.2 redefines petty theft. As discussed, Section 490.2 reduces the possible punishment for defendants convicted of "obtaining property by theft" worth $950 or less. The statute provides: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft" worth $950 or less "shall be considered petty theft and shall be punished as a misdemeanor." The first clause—"Notwithstanding Section 487 or any other provision of law defining grand theft"—is a nonrestrictive phrase, set off with a comma; the rest of the sentence is an independent clause. (See Garner, Garner's Dictionary of Legal Usage (3d ed. 2011) pp. 782, 888–889 [restrictive and nonrestrictive clauses].) Because the nonrestrictive phrase does not limit the rest of the sentence, the plain language of Section 490.2 stands on its own. It provides, "obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor." (§ 490.2, subd. (a).) As defendant notes, this language is exceedingly broad; on its face,

9

Section 490.2 reclassifies the array of criminal behavior described in the theft statutes as petty theft whenever the stolen property is worth $950 or less.[5]

Applying these principles to the issue before us, to convict a defendant of either grand theft or petty theft of an automobile, the People must prove the defendant intended to permanently deprive the owner of possession of his car. (Pen. Code, § 484.[6]) A violation of Section 10851, on the other hand, does not require this intent. Indeed, the main difference between the two offenses is the required mens rea—the gravamen of a theft crime.

A violation of Section 10851, subdivision (a) requires proof of the following elements:

1. The defendant took *or* drove someone else's vehicle;
2. The owner did not consent to the taking or driving; and
3. The defendant intended to deprive the owner of possession or ownership for *any period*.

Section 10851 "proscribes a wide range of conduct." (*People v. Jaramillo* (1976) 16 Cal.3d 752, 757.) "[A] person can violate that section by driving *or* taking a vehicle.

---

[5] The prefatory phrase "notwithstanding any other provision of law has been called a term of art [citation] that declares the legislative intent to override all *contrary* law." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 983, internal quotation marks omitted.) Likewise, the narrower "phrase 'notwithstanding subdivision (a)' expresses the legislative intent to 'carve out an exception only to subdivision (a) . . . . ' [Citation]." (*Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 13.) As discussed, however, because every theft is either grand theft or petty theft, construing the phrase as a term of art would not resolve the issue presented because we would still need to decide whether Section 10851 is a theft offense.

[6] Penal Code section 487, subdivision (d)(1) classifies auto theft as a grand theft offense. However, like Section 490.2, section 487 is not itself a substantive crime. (*People v. Ortega* (1998) 19 Cal.4th 686, 696 ["Grand theft . . . is not a separate offense, but simply the higher degree of the crime of theft."], overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224.)

The acts constituting driving a vehicle and taking a vehicle are separate and distinct." (*People v. Barrick* (1982) 33 Cal.3d 115, 135.)

In this context, "taking" is not a synonym for stealing; it is a legal term of art describing one element of theft by larceny. (*People v. Gomez* (2008) 43 Cal.4th 249, 255.) Taking "has two aspects: (1) achieving possession of the property, known as 'caption,' and (2) carrying the property away, or 'asportation.'" (*Ibid*.) Therefore, if a defendant takes or drives a vehicle with the intent to deprive the owner of possession **temporarily**, he has not committed theft. (*People v. Garza* (2005) 35 Cal.4th 866, 871 (*Garza*); *People v. Barrick*, *supra*, 33 Cal.3d at p. 135.) On the other hand, if he takes or drives the vehicle with the intent to deprive the owner of possession **permanently**— that is, with the intent to steal it—he has committed a theft offense. (*Garza*, *supra*, at pp. 871, 876, 878–879, 880–881.) Put another way, every car thief necessarily violates Section 10851, but a defendant who takes or drives a vehicle is not necessarily a car thief. (*Ibid*.)

Regardless of the definitional boundaries of the phrase "obtaining any property by theft"—an issue we need not and do not reach—Section 490.2 indisputably applies only to theft offenses. Because driving or taking a vehicle with the intent to deprive the owner of temporary possession is not theft, defendants convicted of this form of Section 10851 are ineligible for resentencing under Proposition 47. However, neither the grammatical structure of Section 490.2 nor the statutory definition of theft resolves whether defendants convicted of Section 10851 under a *theft theory* are eligible for resentencing. As discussed in the next section, we conclude, as a matter of statutory interpretation, that all convictions under Section 10851—including those committed with the intent to deprive the owner of permanent possession of a vehicle—are ineligible for reduction in accordance with section eight of Proposition 47. (See Ballot Pamp., *supra*, text of Prop. 47, § 8, p. 72 [adding § 490.2].)

**5.** **Proposition 47 must be considered as a whole to harmonize all of its provisions.**

Although we look first at the words of a statute, we do not consider the statutory language in isolation; rather, we read the statute "as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.) We construe all parts of a statute together, without according undue importance to a single or isolated portion. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228 (*Cooley*).) Thus, a " 'word or phrase will be given the same meaning each time it appears in a statute.' " (*Id.* at p. 255.) Where statutes are inconsistent, we attempt to provide a harmonious interpretation, and give effect to every provision, so that one section does not destroy another. (*People v. Jenkins*, *supra*, at p. 246; see 2A Sutherland Statutory Construction (7th ed., rev. Apr. 2014) § 46:6, pp. 238–252.) "Significance should be given, if possible, to every word of an act." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.) "Conversely, a construction that renders a word surplusage should be avoided." (*Id.* at p. 799.)

**5.1** **Rule Against Surplusage**

Proposition 47 amended Penal Code section 666 (Section 666), petty theft with prior, and reduced the maximum prison sentence for that offense from three years to one year. Eligible predicates include prior convictions for "petty theft, grand theft, . . . auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery," and receiving stolen property. (§ 666, subd. (a).) To interpret Proposition 47 as a symmetrical, coherent scheme, in which operative words are used consistently throughout, we must accord "petty theft" and "grand theft" the same meaning in both section eight (adding § 490.2) and section 10 (amending § 666). (See Ballot Pamp., *supra*, text of Prop. 47, §§ 8, 10, p. 72.) The inclusion of "auto theft under Section 10851 of the Vehicle Code[]" alongside "grand theft" and "petty theft" in Section 666 is therefore a significant indication that the voters did not consider Section 10851 a variety of petty theft or grand theft. If the initiative drafters had considered "auto theft under Section 10851" a species of petty theft—a term they

defined in section eight (adding § 490.2)—there would have been no need to designate it as a separate predicate in section 10 (amending § 666).[7]  (See *Bradwell v. Superior Court* (2007) 156 Cal.App.4th 265, 272 (*Bradwell*) [statute's inclusion of both " '[g]rand theft of any type' " and " '[f]elony welfare fraud' " indicates welfare fraud is not a form of grand theft].)  Under the rule against surplusage, therefore, Section 490.2 does not encompass Section 10851.

For similar reasons, the initiative's inclusion of Section 666 implies the purposeful exclusion of Section 666.5—the actual crime of conviction in this case. Proposition 47 expressly designates certain theft offenses for reduction—Penal Code sections 459.5, 473, 476a, 490.2, 496, and 666.  (See Ballot Pamp., *supra*, text of Prop. 47, § 14, p. 73 [adding Pen. Code, § 1170.18].)  By identifying only these criminal offenses, voters signaled their intent to exclude any unlisted theft offense from the reclassification and resentencing scheme.  (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 ["The expression of some things in a statute necessarily means the exclusion of other things not expressed."].)  Section 666.5 is not listed in section 14.  Therefore, a conviction under that statute is excluded from reclassification and resentencing under Proposition 47 unless it is reduced by operation of another listed section, such as Section 490.2.

The rule against surplusage also requires us to conclude that Section 490.2 does not encompass Section 666.5.  (See *Cooley*, *supra*, 29 Cal.4th at p. 249.)  Section 14 of the Act explicitly lists *both* Section 490.2 and Section 666.  (Ballot Pamp., *supra*, text of Prop. 47, § 14, p. 73 [adding Pen. Code, § 1170.18].)  Section 666 is analogous to

---

**7**     As discussed at length above, while every theft offense is classified as either grand theft or petty theft, grand theft and petty theft are not substantive crimes; they are two degrees of a variety of theft offenses.  (Pen. Code, § 486 ["Theft is divided into two degrees, the first of which is termed grand theft; the second, petty theft."]; see opn. *ante*, at sec. 4.)  Accordingly, theft of a vehicle worth less than $951 *cannot* be petty theft unless theft of a vehicle worth more than $950 *is also* grand theft.  That is, if Section 10851 can be a type of petty theft, Section 10851 must also be a type of grand theft.

Section 666.5.  (*Young*, *supra*, 234 Cal.App.3d at pp. 113–115.)  Because Section 490.2 and Section 666 are listed together in section 14 (adding § 1170.18), Section 666 cannot be a form of petty theft within the meaning of section eight (adding § 490.2); any other construction of section eight would render Section 666 surplusage in section 14.  And because Section 666 is not included within Section 490.2, it stands to reason that Section 666.5—the related provision—is excluded as well.

This construction harmonizes the initiative's provisions and gives effect to every word.  Conversely, interpreting Section 490.2 to encompass either Section 666.5 or Section 10851 would render portions of the initiative surplusage.  (*Cooley*, *supra*, 29 Cal.4th at p. 249 [courts should give meaning to every word of a statute and avoid a construction making any word surplusage].)  For these reasons, we find Section 490.2 does not apply to Section 666.5 or Section 10851.

### 5.2    Particular provisions qualify general provisions.

" 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former.  A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' " (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 quoting *Rose v. State of California* (1942) 19 Cal.2d 713, 723–724; see Pen. Code, § 7.5 [where statutes conflict, preference for particular over general].)  "In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86 interpreting *In re Williamson* (1954) 43 Cal.2d 651, 654.)  Just as we may not divorce one section of Proposition 47 from the rest of the initiative, in the event a broader law conflicts with a specific one, the specific controls.  (*People v. Johnson* (2002) 28 Cal.4th 240.)

In *People v. Bradwell*, the court of appeal addressed whether welfare fraud (Welf. & Inst. Code, § 11483) was a theft offense.  (*Bradwell*, *supra*, 156 Cal.App.4th at pp. 269–273.)  The court reasoned that because welfare fraud contained all the statutory

14

elements of theft, it was a theft offense, and therefore a predicate crime under the plain meaning of former Penal Code section 666. (*Id.* at p. 269.) However, because welfare fraud was a special statute that included the same subject matter as the more general theft statute, and because it was part of a unique statutory scheme, the court concluded it was an exception to the general theft provision, and could not be classified as either petty theft or grand theft. (*Id.* at pp. 269–273.)

Likewise, in *People v. Murphy*, the California Supreme Court held that Vehicle Code section 10501, filing a false vehicle-theft report, was an exception to a more general statute, Penal Code section 115, which prohibits filing a false instrument in a public office. (*People v. Murphy*, *supra*, 52 Cal.4th at pp. 85–95.) The Court reasoned, "Penal Code section 115 is more general than Vehicle Code section 10501 because it applies to a broader range of documents that may be filed in any public office[,]" and a violation of Vehicle Code section 10501 would commonly result in a violation of Penal Code section 115. (*Id.* at p. 88.)

Here, Penal Code section 484 prohibits the "felonious[]" taking of personal property—of which cars are but one variety. Section 10851 on the other hand, targets specific car-related behavior—driving or taking a vehicle—that may also violate Penal Code section 484. Moreover, Section 10851 is a cornerstone of a detailed statutory scheme encompassing public safety, tow-truck regulations, stolen-vehicle recovery, and car insurance. (See, e.g., Vehicle Code division four [Special Antitheft Laws (Veh. Code, § 10500 et seq.)]; Motor Vehicle Theft Prevention Act, Veh. Code, § 10900 et seq.) If the electorate intended to reclassify violations of Section 10851, it would not do so, without comment, via a general Penal Code provision redefining petty theft. Therefore, to the extent Section 10851 may be violated in a way that brings it within Penal Code sections 484 and 490.2, we conclude the specific rule of Section 10851 is an exception to the general rule announced in Section 490.2, subdivision (a). (See *Bradwell*, *supra*, 156 Cal.App.4th at p. 273 ["Although welfare fraud is like other fraudulent theft in terms of conduct, it differs in terms of context[,]"

in part because of the " 'unique statutory scheme' " that blends noncriminal and criminal resolutions].)

### 6. Equal Protection

Defendant also contends that equal protection principles require that his conviction for unlawfully taking or driving a vehicle in violation of Section 10851 be treated in the same manner as a conviction for grand theft in violation of Penal Code sections 484 and 487, subdivision (d)(1). We are not persuaded.

Because the challenged classification—that defendants who intend to deprive owners of their vehicles temporarily are treated differently than those defendants who intend to deprive owners of their vehicles permanently—does not involve a suspect class or a fundamental right, we determine whether it bears a rational relationship to a legitimate state interest. (*Romer v. Evans* (1996) 517 U.S. 620, 635; *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481–482.) If the voters had plausible reasons for the classification, we must uphold the statute. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 878.) "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. . . . [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in rational speculation as to the justifications for the legislative choice. . . . [Citation.] To mount a successful rational basis challenge, a party must negative every conceivable basis that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its wisdom, fairness, or logic. [Citation.]" (*Id.* at p. 881, internal quotation marks omitted.)

Applying rational basis scrutiny, the California Supreme Court has held that "neither the existence of two identical criminal statutes prescribing different levels of punishments, nor the exercise of a prosecutor's discretion in charging under one such statute and not the other, violates equal protection principles." (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838 (*Wilkinson*).) Accordingly, "a car thief may not complain because he may have been subjected to imprisonment for more than 10 years for grand theft of an automobile [citations] when, under the same facts, he might have been

16

subjected to no more than five years under the provisions of section 10851 of the Vehicle Code." (*People v. Romo* (1975) 14 Cal.3d 189, 197.) The same reasoning applies to Proposition 47's provision for reduced sentences for a limited subset of defendants previously convicted of grand theft, but not for defendants convicted of unlawfully taking or driving a vehicle in violation of Section 10851. Absent a showing that a particular defendant " 'has been singled out deliberately for prosecution on the basis of some invidious criterion,' . . . the defendant cannot make out an equal protection violation." (*Wilkinson*, *supra*, 33 Cal.4th at p. 839.) The defendant in this case has made no such showing.

We also reject defendant's contention that it is always irrational to punish a lesser-included offense more harshly than a greater offense. This argument is based on the premise that a lesser-included offense is always less serious than a greater offense, and therefore inevitably warrants a lesser punishment. While Section 10851 is a lesser-included offense of grand theft auto (*People v. Barrick*, *supra*, 33 Cal.3d at p. 128), defendant misconstrues the relationship between lesser and greater offenses. One offense is necessarily included in another if all of its elements are also elements of the greater offense. (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.) However, a lesser-included offense is not necessarily *less serious* than a greater offense; it simply has fewer statutory elements. (See *Wilkinson, supra*, 33 Cal.4th at p. 839 [not irrational to punish lesser-included offense more severely than greater offense].)

In any event, the voters had sound reasons to treat the temporary deprivation of a vehicle differently than the theft of that same vehicle. In general, the Vehicle Code is concerned with assuring public safety on California thoroughfares, whereas the Penal Code is concerned with wrongs to individual people. For example, Vehicle Code section 10850 provides that the provisions of chapter 4, which includes Section 10851, "apply to vehicles upon the highways and elsewhere throughout the State." In turn, Vehicle Code section 360 defines a highway as a "way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." By punishing taking or driving a vehicle without the intent to deprive the owner of

17

permanent title or possession, Section 10851 focuses on dangers to members of the public who use roads and highways. Such dangers are not encompassed by standard theft statutes, which focus on particular victims—the owners of stolen personal property.

Lawmakers have targeted these risks in a variety of ways. For example, Vehicle Code section 13350 requires the Department of Motor Vehicles to revoke a defendant's driving privileges if he uses a motor vehicle to commit a felony. (Veh. Code, § 13350, subd. (a)(2).) Among other goals, the statute aims to deter the use of motor vehicles in criminal endeavors. (*In re Gaspar D.* (1994) 22 Cal.App.4th 166, 170.) Likewise, Vehicle Code section 13202 provides for suspension or revocation of a defendant's license where a "motor vehicle was involved in, or incidental to, the commission of" a drug offense. (See *People v. Monday* (1990) 224 Cal.App.3d 1489 [construing statute].) Civil penalties like these apply regardless of whether a perpetrator owns the car he uses to commit the target crime.

Engaging in *Johnson*'s "rational speculation," we find that Section 10851 was enacted to target defendants who take or drive vehicles temporarily, intending to use them to facilitate other crimes, such as armed robbery, assault, or transportation of narcotics. When a defendant takes a car to commit another unrelated offense, the vehicle's value is irrelevant—and driving safely is an afterthought. By contrast, a thief who steals a car for resale or for its parts has an incentive to drive safely, and therefore presents less of a risk to the public. Because felony prosecutions under Section 10851 serve important public safety and deterrence functions that differ from those served by prosecutions for automobile theft, it is rational to treat the two groups differently.

**DISPOSITION**

The order denying defendant's petition for recall and resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

STRATTON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.